UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH SIMPSON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | Case No. 4:11 CV 2058 RWS |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Kenneth Simpson has filed a motion under 28 U.S.C. § 2255 to Vacate, Set

Aside or Correct Sentence by a Person in Federal Custody.  Simpson claims that his plea was not

voluntarily or knowingly entered into, he received ineffective assistance of counsel, and that this

Court lacked jurisdiction over his criminal case.  Simpson argues that, but for the ineffective

assistance of his counsel, he would have insisted on going to trial.

For the reasons set forth below, I will deny Simpson's motion.

## I.      Background

On March 18, 2010, Simpson was indicted by a federal grand jury in a two count

indictment.  Count I charged Simpson with receipt of child pornography in violation of 18 U.S.C.

§ 2252A(a)(2).  Count II charged Simpson with possession of child pornography in violation of

18 U.S.C. § 2252A(a)(5)(B).  On February 14, 2011, Simpson pleaded guilty to Count I, receipt

of child pornography.

At his plea hearing, Simpson stated, under oath, that the Plea Agreement was true and

correct.  The Plea Agreement set forth the following facts:

In 2008, St. Louis County Police identified a computer located in the State of Missouri that was offering to participate in the distribution of known child pornography. (Plea Stip., ¶ 4) A subpoena issued to AT&T revealed that the subscriber was Mary Simpson. Id. Based upon this information, law enforcement officers applied for and obtained a search warrant for Mary Simpson's residence. Id. Law enforcement officers executed the warrant on February 11, 2009. Id. at 16. A forensic examination was conducted on the computers and media seized from Mary Simpson's residence. Id. A forensic examination of Kenneth Simpson's computer found that it contained a Western Digital hard drive. Id. A forensic examination of the Western Digital hard drive revealed that it contained thirteen (13) image files and six (6) video files depicting child pornography. Id. at 17.

At his plea hearing, Simpson told me, under oath, that he was satisfied with his counsel's representation. (Plea Hr'g Tr. at 6) Simpson told me that he had gone over his plea agreement repeatedly with counsel and that counsel answered all of Simpson's questions. Id. at 8. Simpson stated that no one had made any other promise or assurance to him in order to induce him to plead guilty. Id. at 14. Simpson stated that he understood he had the opportunity to plead not guilty and have a trial by jury, and that he knew there would be no trial if he entered a guilty plea. Id. at 6-7. At the conclusion of the hearing Simpson pleaded guilty to the charge of receipt of child pornography. Id. at 21.

On May 12, 2011, Simpson was sentenced to the mandatory minimum sentence of 60 months in prison and supervised release for life.

Simpson now claims, contrary to what he said under oath at his plea hearing, that his guilty plea was not made knowingly or voluntarily and that he received ineffective assistance of

counsel.  He also asserted that this Court lacked of jurisdiction to hear his criminal case.

## II.    Grounds for Relief

In his 28 U.S.C. § 2255 motion, Simpson alleges the following grounds for relief:

1. His plea was not made knowingly or voluntarily because

(a) I did not correctly inform him of the potential range of his sentence and counsel misled Simpson as to the benefits and risks of trial;

(b) Counsel made other promises to Simpson; and

(c) I misled Simpson as to how sentencing would proceed in his case

2. He was denied effective assistance of counsel in violation of the Sixth Amendment when counsel failed to:

(a) file a pretrial motions after receiving accurate information concerning images from Simpson's computer;

(b) file a motion to suppress statements;

(c) file a motion to suppress the warrant due to staleness of information;

(d) assert a alcoholism defense;

(e) challenge this Court's jurisdiction;

(f) present evidence of prosecutorial misconduct;

(g) seek a better plea deal; and

(h) step aside to let Simpson file his own appellate brief

3. That this Court lacks jurisdiction because there is no sufficient interstate nexus and the charged conduct is not commercial.

### III.    Standard for § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."). A motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.' " United States v. Wilson, 997 F.2d 429, 431 (8th Cir.1993) (quoting Davis v. United States, 417 U.S. 333, 343 (1974)).

"'Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" Theus v. United States, 611 F.3d 441, 449 (8th Cir. 2010) (quoting United States v. Wiley, 245 F.3d 750, 752 (8th Cir.2001)). One exception arises when there is a "miscarriage of justice," but the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. Wiley, 245 F.3d at 752 (noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the

'extraordinary case.' " (citations omitted).  Section 2255 ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

## IV.   ANALYSIS

### A.   Simpson's Guilty Plea was made Knowingly and Voluntarily

In his first ground for relief, Simpson alleges that his guilty plea was not intelligently entered and that it was not made knowingly and voluntarily.  He asserts that I did not correctly inform him of the potential range of his sentence and that he did not understand the consequences of his plea. Simpson also claims that counsel informed him that he would be sent to a prison camp if he pleaded guilty and that he could earn time off by enrolling in sex offender treatment, drug treatment, and religious programs.  In addition, Simpson alleges that I misled him as to how sentencing would proceed in his case.  These claims have no merit..

Simpson waived his right to appeal these claims.  In his Plea Agreement, Simpson agreed to "waive all rights to appeal all non-jurisdictional issues" including the taking or acceptance of the guilty plea and the factual basis for the plea.  The Plea Agreement also stated that "[t]he defendant acknowledges being guilty of the crimes to which a plea is being entered." Simpson further agreed to "waive all rights to contest the conviction ... in any post-conviction proceeding, including one pursuant to" § 2255 "except for claims of prosecutorial misconduct or ineffective assistance of counsel."  The Plea Agreement, Simpsons' plea colloquy, and the transcript of his

sentencing hearing clearly demonstrate that Simpson knowingly and voluntarily waived his right

to file this motion.  Because Simpson also has not contested that these waivers were given both

"knowingly and voluntarily," the waiver is enforceable.  United States v. Rutan, 956 F.2d 827,

829 (8th Cir. 1992)("If a waiver of appeal is made knowingly and voluntarily, it is enforceable.").

Finally, this claim fails because Simpson cannot now contradict his prior admissions of guilt

made under oath.  However, even if Simpson's challenges to the voluntariness of his plea were

able to be construed as an ineffective assistance of counsel claim, which would be allowed as an

exception to the appeal waiver, they still must fail for the following reasons.

Simpson claims that his plea was not intelligently entered because I did not inform

Simpson of "the benefits of pleading and the risks of trial," and that Simpson's counsel "claimed

that the prison defendant would get sent to would be decided by whether or not a plea was

reached."  See Petition at 17.  Next, Simpson claims that counsel informed him that he "could

take time off his sentence by enrolling in sex offender treatment and religious programs . . . and

the drug treatment programs."  Id.

"Out of just consideration for persons accused of crime, courts are careful that a plea of

guilty shall not be accepted unless made voluntarily after proper advice and with full

understanding of the consequences. When one so pleads, he may be held bound." United States

v. Frook, 616 F.3d 773, 775 (8th Cir. 2010)(quoting Kercheval v. United States 274 U.S. 220

(1927)).  "The voluntariness of a guilty plea presents a mixed question of law and fact subject to

independent review by this court." Porter v. Lockhart, 925 F.2d 1107, 1110 (8th Cir. 1991)

(quoting Blalock v. Lockhart, 898 F.2d 1367, 1370 (8th Cir. 1990)).

"The test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. at 1110 (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).  A guilty plea is voluntary if it is "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel...."  Brady v. United States, 397 U.S. 742, 755 (1970). "[I]t must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes)." Id.  When a defendant pleads guilty and then later alleges that the plea was not made voluntarily, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Here, Simpson has failed to show that any information which formed the basis of his sentence was a surprise or was not contemplated by the Plea Agreement.

A "defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (quoting Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985)); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity" and representations of the defendant at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings").  Simpson has a heavy burden to overcome admissions made at a plea hearing to show that the plea was involuntary and not intelligently entered.

At his plea hearing, Simpson stated that he was satisfied with his attorney's representation and the advice given to him by his attorney.  (Pl. Hr'g Tr. at 6)  He was asked if he had gone over the Plea Agreement with his attorney, and he stated that he had and that he did not object to anything in it.  Id. at 8.  Simpson was asked if anyone had "offered you anything or given you anything to get you to plead guilty," and Simpson said that no one had done so.  Id. at 14.  He was asked if he understood that he had the right to plead not guilty and that by pleading guilty he waived his right to a trial and other rights associated with a trial, and Simpson stated that he understood.  Id. at 7.

The written Plea Agreement and stipulation Simpson entered into with the government also addressed the voluntariness of the guilty plea.  The Plea Agreement contained the following stipulation:

> This document constitutes the entire agreement between the defendant and the government, and *no other promises or inducement have been made*, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea entered in this case or the agreements, recommendations or stipulations contained herein. In addition, the *defendant states that no person has, directly or indirectly, threatened or coerced* the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.  The defendants agreements, recommendations and stipulations as set forth above are made in exchange for the United States' agreements, recommendations and stipulations set forth in this document.  The defendant acknowledges that the defendant has voluntarily entered into both this plea and these agreements, recommendations and stipulations.  The defendant further acknowledges that this guilty plea *is made of the defendant's own free will* because the defendant is, in fact, guilty of the conduct specified in sections four and five above.

(Plea Stip, ¶ 11) (emphasis added)

Furthermore, the Plea Agreement also establishes that Simpson was fully advised of the rights he was giving up as a result of his guilty plea.  The written Plea Agreement contained the following stipulation:

> The defendant acknowledges and fully understands the following rights: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pre-trial motions, including motions to suppress evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the entire case against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

(Plea Stip, ¶ 8)

Simpson's claim that he could earn time off by enrolling in sex offender treatment, religious, and drug treatment programs is also refuted by the record.  Simpson and I had the following exchange:

COURT:  Does this agreement contain all the promises made to you by the United States Attorney?

SIMPSON:  As far as I'm aware, yes.

COURT:  Did they promise you anything you know of that they didn't put in writing?

SIMPSON:  No.

COURT:  Has anyone else offered you anything or given you anything to get you to plead guilty?

-9-

SIMPSON:  No.

(Plea Hr'g Tr. at 14)

The record demonstrates that neither the Assistant United States Attorney, nor anyone

else had made Simpson any promises to get him to plead guilty other than what was contained in

the Plea Agreement.

Simpson was aware of the possible penalties and the length of his potential sentence prior

to pleading guilty.  The Plea Agreement contained the following stipulation pertaining to the

length of Simpson's sentence:

> The Defendant fully understands that the maximum penalty provided by law for
> the crime to which the defendant is pleading guilty is a term of imprisonment of
> not less than five years and not more than twenty years, a fine of not more than
> $250,000, or both such imprisonment or fine.  The Court may also impose a
> period of supervised release of not less than five years and not more than life.

(Plea Stip, ¶ 6(A))

Simpson's awareness of the statutory maximum is also evident from the plea colloquy,

wherein the following exchange occurred:

COURT:  You understand that the sentence for the charge to which you're

pleading guilty is a term of not less than five years and not more than 20 years?

SIMPSON:  Yes.

COURT:  And there is a maximum fine of $250,000?

SIMPSON:  Yes.

COURT:  That you could be sentenced to the maximum term of imprisonment or

assessed the maximum fine or both?

SIMPSON:  Yes.

-10-

(Plea Hr'g Tr. at 19)

Simpson's awareness of the minimum sentence of 60 months is also evident from the plea

colloquy, wherein the following exchange occurred

COURT: And you understand that there is a mandatory minimum sentence of 60

months, so if, for whatever reason, the guidelines range may be lower than that, the statute

mandates or requires a sentence of no less than 60 months, so then the guidelines wouldn't have

an effect on your sentence.

SIMPSON: Yes.

(Plea Hr'g Tr. at  9)

Finally, the record also indicates that Simpson was fully aware of the charge against him

and the elements of the offense. (Plea Stip, ¶ 5 and Pl. Hr'g Tr. at 13-14).  Both the plea colloquy

and plea stipulation contained a recitation of the factual basis for the plea. (Plea Stip, ¶ 4 and Pl.

Hr'g Tr. at 15-19 ).

Because Simpson stated that he was satisfied with the work his counsel had done on his

behalf, that he knew of the maximum and minimum statutory penalty, affirmed that no threats or

promises had been made to induce him to plead guilty, and provided no evidence that he was

coerced into a guilty plea, he cannot overcome the strong presumption that his attorney

competently represented him and that his guilty plea was voluntary.  The record clearly

establishes that he was fully aware of his constitutional rights and that he waived those rights and

pleaded guilty.

Next, Simpson alleges that I misinformed him as to how sentencing would proceed in his

case.  Specifically, Simpson alleges that I "misinformed defendant as to how sentencing would

proceed if the defendant was found guilty" by stating that "I would decide, based on a preponderance of the evidence, what files were in the defendant's possession, including files a jury might find the defendant not guilty of."  See Petition at 16.  Simpson argues that this statement violates United States v. Booker, 543 U.S. 220 (2005).  The United States Court of Appeals for the Eighth Circuit has stated:

> After United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), "judicial factfinding is permissible at sentencing so long as the district court understands that the sentencing guidelines are advisory only." United States v. Brave Thunder, 445 F.3d 1062, 1065 (8th Cir. 2006). Under an advisory sentencing regime, "the district court is entitled to determine sentences based upon judge-found facts and uncharged conduct" where the defendant is "not sentenced in excess of the statutory maximum." United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006) (citing United States v. Red Elk, 426 F.3d 948, 951 (8th Cir. 2005)); see also United States v. Okai, 454 F.3d 848, 851 (8th Cir. 2006) (explaining, "after Booker, facts underlying sentencing enhancements that are not used to increase the defendant's sentence above the congressionally authorized maximum need not be alleged in the indictment to pass constitutional muster" (citations omitted)). "[S]entencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence." Garcia-Gonon, 433 F.3d at 593 (citing United States v. Pirani, 406 F.3d 543, 551 n. 4 (8th Cir. 2005) (en banc)).

United States v. Cruz-Zuniga, 571 F.3d 721, 726 (8th Cir. 2009).  The statutory maximum for the charge Simpson pleaded guilty to was twenty years of imprisonment.  I sentenced Simpson to the mandatory minimum of five years of imprisonment.  Simpson's claim fails because I did not sentence Simpson above the statutory maximum.

### B.      Simpson Received Effective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

defense." U.S. Const. amend. VI.   A claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal.  See United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

To prevail on a claim alleging ineffective assistance of counsel, the defendant must satisfy the two-part test of Strickland v. Washington, 466 U.S. 668 (1984).  For a convicted defendant to prove his counsel was ineffective, the defendant must first show that the counsel's performance was deficient. Strickland, 466 U.S. at 687. This requires the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  A defendant can demonstrate that counsel's performance was deficient where counsel's performance "'fell below an objective standard of reasonableness.'"  Wiggins v. Smith, 539 U.S. 510, 522, (2003) (quoting Strickland, 466 U.S. at 688). But "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690).  And "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689).  If the defendant fails to show that his counsel was deficient, the court need not address the second prong.  Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002).

Second, the defendant must also demonstrate that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 at 687.  "The defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  In the context of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Eighth Circuit has described the Strickland test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).  When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" Fields, 201 F.3d at 1027, (quoting Strickland, 466 U.S. at 688).  "And we avoid making judgments based on hindsight." Id.  A reviewing court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

Where a defendant raises multiple claims of ineffective assistance, each claim must be examined independently rather than collectively.  Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002).

   a.   *Counsel Failed to File Pre-Trial Evidentiary Motions after Receiving Accurate Information Concerning Images from Simpson's Computer*

Simpson claims that he received ineffective assistance of counsel when counsel failed to

file pretrial motions after receiving the correct discovery packet.  For the reasons set forth below, Simpson's claim fails.

On April 1, 2010, the Assistant United States Attorney produced discovery to Simpson. It included a CD of an audio recording of Simpson's statements to the police indicating his knowing receipt and possession of child pornography.  It also included a forensic report for the computer seized from Simpson's residence and the report from the National Center for Missouri and Exploited Children identifying the known victims in the images retrieved from Simpson's computer.  The production also contained specific technical information about the images on the computer such as file path, part, extension, file type, category, date created, date modified, date accessed, logical size, pysical size, index, sector, cluster, item number, header. and SHA value.

On April 12, 2010, Simpson filed his pretrial motion to suppress statements.  He appeared before the United States Magistrate on April 21, 2010, and waived that motion.

In October 2010, the Assistant United States Attorney realized she had produced the wrong technical information about the images on Simpson's computer.  This technical information was from another case.  On October 12, 2013, the Assistant United States Attorney provided Simpson with the correct technical information.  There is no dispute that the images Simpson possessed was child pornography.

Simpson asserts that he received ineffective assistance of counsel when "[u]pon receiving correct evidence, [counsel] filed no motions to protest or dismiss." [Doc. # 1 Motion to Vacate at 18]  I find that Simpson cannot establish a claim for the deficient performance of counsel based on these facts.  The corrected documents had technical information about the images.  Simpson appears to argue that the corrected production should have been the basis of some objection by

his counsel.  There was not any legitimate basis to challenge this technical information in a pretrial motion.  The corrected information was provided to counsel four moths before he entered his guilty plea on February 14, 2011.  Simpson has failed to demonstrate that an attempt by his counsel to file motions concerning the corrected production would have been successful.

       *b.*     *Counsel Failed to File a Motion to Suppress Statements*

Simpson claims that he received ineffective assistance of counsel when counsel withdrew his motion to suppress statements he made in an interview with police following the execution of the search warrant.  Simpson claims that, relying on counsel's advice, he waived his right to a hearing on his motion to suppress statements.  Because the Assistant United States Attorney produced correct discovery after Simpson withdrew the motion, Simpson argues that counsel was ineffective for withdrawing his motion as the evidence he relied upon for pretrial motions was incorrect.  The claim is without merit.

Simpson withdrew his motion, on the advice of counsel, after he was informed that the Assistant United States Attorney would not offer the third point for acceptance of responsibility if he proceeded with the hearing.  Simpson and counsel discussed whether he should withdraw the motion at the hearing, and ultimately elected to withdraw the motion to suppress after Simpson discussed whether to withdraw the motion with counsel.

Counsel's recommendation to withdraw the motion is well within the wide range of professionally competent assistance.  Counsel withdrew the motion to preserve Simpson's third point for acceptance of responsibility.  Because Simpson was sentenced to five years of imprisonment, had counsel elected to proceed with the motion, Simpson would have lost the third point for acceptance of responsibility.  Therefore Simpson's applicable guideline range

would have been above the five year sentence I imposed.

The decision not to file pretrial motions was a strategic one, made by both Simpson and counsel. Counsels' "strategic choices made after thorough investigation of law and facts ... are virtually unchallengeable." Strickland, 466 U.S. at 690. "We presume attorneys provide effective assistance, and will not second-guess strategic decisions or exploit the benefits of hindsight." Payne v. United States, 78 F.3d 343, 345 (8th Cir. 1996).

Moreover, the corrected production of the technical information regarding the images on Simpson's computer had no relation to Simpson's pretrial motion to suppress the statements he gave to law enforcement officers.  Simpson's counsel was not ineffective for withdrawing the motion to suppress statements.

    *c.*    *Counsel Failed to File a Motion to Suppress the Warrant Due to Staleness of Information*

Simpson claims that he received ineffective assistance of counsel when counsel failed to file a motion to suppress the warrant due to the staleness of information. Simpson's claim fails.

The search warrant for the search of Simpson's residence was lawfully issued. Probable cause is required to support a search warrant.  See United States v. McCoy, 483 F.3d 862, 863 (8th Cir. 2007).  Probable cause exists where a judge makes a "'practical, commonsense decision' that there [is] a 'fair probability' that evidence of a crime ... would be found" at the place identified in the warrant. Id. at 864.  "Important factors to consider in determining whether probable cause has dissipated ... include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search.  United states v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997).

The warrant for the search of Simpson's residence was issued based on an investigation by Sergeant Kavanaugh.  On August 6, 2008, Kavanaugh identified a computer in the state of Missouri that was offering to participate in the distribution of known child pornography.  (Plea Hr'g Tr. at 15)  In February 2009, law enforcement officers executed the search warrant.  Id. at 16.  Kavanaugh's investigation provided the issuing judge with a substantial basis for finding probable cause in support of issuing the warrant.  Evidence developed within several months of an application for a search warrant for a child pornography collection and related evidence is not stale.  See United States v. Horn, 187 F.3d 781, 786-87 (8th Cir. 1999); see also United States v. Estey, 595 F.3d 836, 840 (8th Cir. 2010) (warrant not stale for child pornography based on five month old information).  Similarly, other courts have also found probable cause to support a search warrant despite a lapse of several months between discovering information linking the defendant's residence with child pornography.  See United States v. Hay, 231 F.3d 630, 636 (9th Cir.2000) (warrant not stale for child pornography based on six-month old information); United States v. Lacy, 119 F.3d 742, 745–46 (9th Cir.1997) (warrant upheld for child pornography based on ten month old information).

Any motion challenging the search warrant based on staleness would have been futile. Counsel is not ineffective for failing to make a meritless argument.  Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994); see also Rodriguez v. U.S., 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to raise a meritless argument cannot constitute ineffective assistance.").  As a result, Simpson's claim he received ineffective assistance of counsel for counsel's failure to file a motion to suppress is without merit.

      d.    *Counsel Failed to Assert an Alcoholism Defense*

In his fourth ground of ineffective assistance of counsel, Simpson claims that he received ineffective assistance of counsel when counsel failed to assert a diminished capacity defense. Specifically, Simpson claims that counsel misled him as to the possibility of asserting an alcoholism defense and therefore failed to present a diminish capacity defense.  This claim is without merit.

The defense of diminished capacity only can be used as a defense to a specific intent crime.  See United States v. White Calf, 634 F.3d 453, 457 (8th Cir. 2011).  "Courts generally hold that a specific intent crime is one that requires a defendant to do more than knowingly act in violation of the law. The defendant must also act with the purpose of violating the law. The violation of a general intent crime, by contrast, requires only that a defendant intend to do the act that the law proscribes."  United States v. Gonyea, 140 F.3d 649, 653 (6th Cir. 1998)(citations and quotations omitted).

The charges against Simpson were for the receipt and possession of child pornography. These crimes are general intent crimes.  See United States v. Larson, 346 F. Appx 166, 168 (9th Cir. 2009) (possession of child pornography a general intent crime); United States v. Walden, 478 F. Appx. 571, 576(11 Cir. 2012)( Crimes under 18 U.S.C. § 2252A including receipt and possession of child pornography are general intent crimes).  As a result, a diminished capacity defense was not available to Simpson.  Simpson's counsel's failure to assert such a defense does not support a claim for ineffective assistance of counsel.

e.     *Counsel Failed to Challenge this Court's Jurisdiction*

Simpson claims his counsel was ineffective for failing to challenge this Court's jurisdiction over his criminal case. Specifically, Simpson claims that this Court lacked

-19-

jurisdiction because there was insufficient interstate nexus regarding his receipt of child

pornography.  I address Simpson's challenge to the Court's jurisdiction below in Part C. of this

opinion.  For the reasons stated there I find this claim to be without merit.  As a result, Simpson's

counsel cannot be constitutionally ineffective for failing to make a meritless argument. Dyer, 23

F.3d at 1426.

> f.      *Counsel Failed to Present Evidence of Prosecutorial Misconduct*

Simpson claims that his counsel was ineffective for failing to present evidence of

prosecutorial misconduct. Simpson, however, has failed to explain precisely what prosecutorial

misconduct occurred.  Instead, Simpson simply states that "any deficiency in the original 2255 in

this regard has been rectified in this Motion. As such, the Movant requests that, given the

showings in this document, that this point stand too." [Doc. # 20, Petitioner's Reply Br. at 20]   A

review of the "showings" in this document indicate they refer to "the Government's dishonesty,

both in misquoting the Movant, and in selectively quoting the law to dismiss valid claims." Id. at

23.  These statements do not constitute prosecutorial misconduct.  They are conclusory

allegations that are not sufficient to state a ground for relief for ineffective assistance of counsel.

Bryson v. United States, 268 F.3d 560, 562 (9th Cir. 2001).  As a result, the ground for relief is

without merit.

> g.      *Counsel Failed to Seek a Better Plea Deal*

Simpson claims that his counsel was ineffective for failing to negotiate a more favorable

plea agreement, but the record clearly contradicts that allegation.  Simpson argues that counsel

should have negotiated a plea for possession of child pornography under Count II rather than

receipt under Count I.  Simpson argues he would have avoided the statutory minimum sentence

of 60 months imposed under Count I.

There is no reason to believe that counsel could have negotiated a better plea agreement for Simpson. Nothing in the record shows that the representation provided to Simpson during plea negotiations was deficient or that a better result could have been obtained.  Simpson stated, under oath, that he was satisfied with counsel's representation.  The record does not show that counsel made errors or that but for counsel's errors Simpson would have gone to trial.  This claim is without merit.

> h.    *Counsel Failed to Step Aside to Let Simpson File his own Appellate Brief*

Simpson asserts that his counsel provided him ineffective assistance of counsel on direct appeal when counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).  I find Simpson's claim unavailing.

"[A] criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal." United States v. Davis, 508 F.3d 461, 463 (8th Cir. 2007), (citing Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003)).  "Generally, when counsel submits an Anders brief, the court independently reviews the record for any nonfrivolous issue. If the court finds a nonfrivolous issue, it will direct counsel to more fully brief the issue." Davis, 508 F.3d at 464 (internal citations omitted). In Anders, the Supreme Court instructed that it is "the duty of the court, and not counsel, to review the record and ultimately decide whether the case is wholly frivolous." Id., citing Anders, 386 U.S. at 744.

The Court of Appeals in the instant case "reviewed the record independently" under Penson v. Ohio, 488 U.S. 75, (1988), and "found no nonfrivolous issues not covered by the appeal waiver." United States v. Simpson, No. 11-2096 (8th Cir. 2011) (unpublished).

-21-

As a result, this ground for relief will be denied

**C.      This Court has Jurisdiction Because There was a Sufficient Interstate Nexus**

Simpson claims that this Court lacks jurisdiction over his criminal trial.  Simpson's claim is without merit.

The Plea Agreement set forth the factual allegations that Simpson accepted in choosing to plead guilty, including the following stipulation:

> the Defendant admits to knowingly violating Title 18, United States Code, Section 2252A(a)(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Receipt of Child Pornography are: (1) he knowingly received material that contained images of child pornography; (2) which were visual depictions where the production of such visual depictions involved the use of a  minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct; and (3) *those images were themselves transported in interstate commerce.*

(Plea Stip, ¶ 5) (emphasis added).

The use of digital equipment to store child pornography satisfies the interstate or foreign commerce element. The United States Court of Appeals for the Eighth Circuit has held the interstate commerce element of § 2252A fulfilled where child pornography stored on a digital memory card had previously been transported in interstate and foreign commerce.  United States v. Mugan, 441 F.3d 622, 628–30 (8th Cir. 2006).  The images at issue in this case were found on Simpson's laptop. Its hard drive was manufactured in Malaysia. This piece of equipment was a material that had been "shipped or transported in interstate or foreign commerce" under § 2252A(a)(2).  As a result, the interstate commerce element has been met.

Even if Simpson's use of the hard drive does not satisfy the interstate commerce requirement, Simpson's use of the internet satisfies the interstate commerce requirement.  United

States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007) (the internet is an instrumentality and channel of interstate commerce and Congress has the power to regulate the internet).  See also, United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact.")

As a result, Simpson's jurisdictional claim will be denied.

**D.    An Evidentiary Hearing is not Warranted**

I will not hold an evidentiary hearing on this matter.  "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo–Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted).  However, an evidentiary hearing need not be held if Simpson's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).  Because the record conclusively shows that Simpson is not entitled to relief as a matter of law, I need not hold a hearing.

**V.    Certificate of Appealability**

For this Court to grant a certificate of appealability, Simpson must make a substantial showing that his constitutional right was denied.  See  Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Id.  For the reasons set forth above, I find Simpson has not made such a showing. As such, I will not issue a

certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED that** the motion of Kenneth Simpson to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**IT IS FURTHER ORDERED that** the motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED that** all other pending motions in this matter are **denied as moot**.

**IT IS FURTHER ORDERED that** this Court will not issue a certificate of appealability, as Simpson has not made a substantial showing of the denial of a federal constitutional right.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 11th day of April, 2013

-24-